**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES JARDINE,                        ) Case Nos. 10-3318 SC,
                                      ) 10-3319 SC
   Plaintiff,                       )
                                      ) Related Cases: 10-3335 SC,
        v.                          ) 10-3336 SC
                                      )
MARYLAND CASUALTY COMPANY,            )
                                      )
   Defendant.                       ) ORDER GRANTING MARYLAND'S
_____ ) MOTIONS FOR SUMMARY JUDGMENT
                                      )
JAMES JARDINE,                        )
                                      )
   Plaintiff,                       )
                                      )
        v.                          )
                                      )
ONEBEACON INSURANCE COMPANY,          )
                                      )
   Defendant.                       )
_____ )

I.    **INTRODUCTION**

    Before the Court are four related actions in which Plaintiff
James Jardine ("Jardine") brings claims against insurance companies
Maryland Casualty Company ("Maryland") and OneBeacon Insurance
Company ("OneBeacon").  Case Number 10-3318 ("10-3318") involves
Maryland's refusal to pay the policy amount after a wall in
Plaintiff's property was allegedly damaged.  Case Number 10-3319
("10-3319") involves Maryland's refusal to pay after a fire damaged
the same property.  Case Numbers 10-3335 and 10-3336 concern

United States District Court
For the Northern District of California

OneBeacon's refusal to pay out on a policy after the same wall and fire damage allegedly occurred.  Now Maryland moves for summary judgment in both 10-3318 and 10-3319; these Motions are fully briefed.  ECF Nos. 35, ("10-3319 Mot."), 36 ("10-3318 Mot."), 39 ("10-3319 Opp'n"),[1] 41 ("10-3318 Opp'n"), 43 ("10-3319 Reply"), 44 ("10-3318 Reply").[2]  Because these motions involve the same parties, the same legal standard, and many of the same facts, the Court addresses them jointly in this Order.  For the following reasons, the Court GRANTS Maryland's Motions for Summary Judgment in 10-3318 and 10-3319.

## II.   BACKGROUND

Unless otherwise noted, the following facts are not in dispute between Jardine and Maryland.[3]  Jardine owned a multi-unit commercial building located at 24800-24808 Mission Boulevard in Hayward, California ("the Property").  Maryland RJN Ex. A ("Tent. Decision") at 2.[4]  The Property was insured by Maryland under

---

[1] Maryland urges the Court to ignore the arguments in Jardine's 10-3319 Opposition because the brief was filed a day late under the deadlines set forth in the Civil Local Rules.  10-3319 Reply at 1. Jardine filed a Request for Extension of Time to File Opposition, but this request did not conform to Civil Local Rules 6-2 and 6-3. While the Court does not condone such violations of the Local Rules, ignoring Jardine's Opposition would not further the interests of justice.

[2] Maryland inadvertently filed its 10-3319 Motion and supporting papers in 10-3318.  ECF No. 48.  Jardine also filed his 10-3319 Opposition in 10-3318.  The Court construes these filings as pertaining to 10-3319.  Unless otherwise noted, all ECF numbers refer to filings in the docket for 10-3318.

[3] The Court GRANTS the unopposed requests for judicial notice submitted by Maryland and Jardine.  ECF. Nos. 37 ("Maryland RJN"); 42-2 ("Jardine RJN").

[4] Jardine filed a California State court action against Chavez and Serna for the wall damage, Jardine v. Chavez, et al., Alameda

United States District Court
For the Northern District of California

1    Precision Portfolio Policy Number PAS 41569410.  10-3319 Gross

2    Decl. Ex. K (the "Policy").[5]  Jardine is an insurance agent and

3    sold the Policy to himself.  Id. Ex. A at 20, 25.  In May 2005,

4    Plaintiff leased a portion of the Property to Martha Chavez

5    ("Chavez") and Luz Serna ("Serna"), who used it to operate a

6    business, Bridal & Beyond.  Ten. Decision at 2.  The lease ran from

7    May 15, 2005 to May 14, 2007.  Id.

8        To improve the Property's appearance, Chavez and Serna applied

9    a plaster treatment to its walls, which were composed of painted

10   cinder blocks.  Id.  The parties agree that the plaster treatment

11   interacted negatively with the cinder, causing damage to the wall.

12   10-3318 Mot. at 10; 10-3318 Opp'n at 5-6.

13       On October 28, 2006, Chavez and Serna sold their business and

14   assigned their lease to Raquel Pardo ("Pardo").  Ten. Decision at

15   3.  Around this time, Jardine and Pardo became aware of the wall

16   damage.  Id.  Jardine testified that he never removed the plaster

17   or repaired the wall.  10-3318 Gross Decl. Ex A at 218-219.  In

18   spite of the wall damage, Pardo entered into a new lease with

19   Jardine on April 25, 2007.  Id. Ex. B.

20       The Property sustained additional damage on June 13, 2007 when

21   a halogen light fixture in Pardo's unit set fire to some of her

22   dresses.  10-3319 Gross Decl. Ex. B at 104-105; 10-3319 Opp'n at 4-

23   5.  Maryland contends that the damage from the fire was minor,

24   _____

25   County Superior Court Case No. HG08-36624.  A copy of the court's
     Tentative Decision ("Ten. Decision") in that action was attached as
26   Exhibit A to Maryland's RJN.

27   [5] Jonathan Gross ("Gross"), counsel for Maryland, filed
     declarations in support of Maryland's 10-3318 and 10-3319 motions
28   and replies.  ECF No. 35-1 ("10-3319 Gross Decl."); 36-15 ("10-3318
     Gross Decl."), 38 ("10-3318 Gross Supp. Decl."); 43-1 ("10-3319
     Gross Reply Decl."); 44-1 ("10-3318 Gross Reply Decl.").

United States District Court
For the Northern District of California

causing only a silver-dollar-sized burn mark on the carpet.  10-3319 Mot. at 6.  Jardine disagrees, contending that the fire resulted in substantial fire and smoke damage.  10-3319 Opp'n at 5.  Jardine testified that, due to the fire, he replaced some of the ceiling tile, vacuumed and wiped down the Property, and ran a fan to alleviate the "smoke smell," but did not keep track of his expenses.  10-3319 Gross Decl. Ex. A at 109-110.

Jardine has testified that Pardo stopped paying rent in September or October of 2007 and moved out around that time.  10-3119 Gross Decl. Ex. A at 116.  It is unclear whether the fire or plaster damage was a factor in Pardo's decision.  Id. at 116-117.

On April 2, 2008, Jardine entered into a Policyholders Settlement and Release Agreement with OneBeacon, Pardo's insurer, concerning the fire damage.  10-3335 ECF No. 30, Cook Decl. Ex. F ("Settlement Agreement").  Under the Settlement Agreement, Jardine was "paid for fire damage repairs that may exceed the reasonable and necessary cost of repair."  Id. at 1.

Two weeks later, Jardine notified Maryland of his claims for the plaster and fire damage.  10-3318 Gross Decl. Ex. D; 10-3319 Gross Decl. Ex. E ("Jardine RFA Response") at 2.[6]  With

---

[6] Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure, Maryland contends that its Requests for Admissions ("RFA") in 10-3319 and 10-3318 should be deemed admitted as undisputed facts because Jardine failed to provide timely responses.  10-3318 Mot. at 12; 10-3319 Mot. at 8. Jardine's attorney claims that the RFAs in 10-3318 were not properly served and that the parties reached an undocumented agreement to extend the response deadline for the RFAs in 10-3319.  ECF Nos. 42-1 ¶ 3, 40 ¶ 4.  The Court is reluctant to deem Maryland's RFAs admitted as there is a dispute concerning service and the existence of an agreement extending the response deadline.  Further, the default admissions would contradict the positions Jardine has taken throughout this litigation.  Accordingly, the Court declines to deem admitted Maryland's RFAs.

**United States District Court**
For the Northern District of California

1  respect to the plaster damage, a structural engineer hired by

2  Maryland concluded that the damage was caused by a sulfate attack

3  on the wall, resulting from a combination of moist conditions, the

4  application of the wrong type of plaster, and inadequate wall

5  preparation.  10-3318 Gross Decl. Ex. E. at 4.  An engineer hired

6  by Jardine, William Jones ("Jones"), agreed.  Id. Ex. G.  Maryland

7  ultimately paid Jardine $46,225 for the plaster damage -- $25,000

8  as the actual cash value of the structure, $2,500 to repair

9  residual damage from the extraction of core samples from the walls,

10 $4,175 for Jones' engineering services, and a $14,550 advance for

11 business income loss coverage.  Id. Exs. N, O, P at 110-11.

12     With respect to the fire damage, on August 28, 2008, an

13 independent adjustor prepared a repair estimate at Maryland's

14 request.  10-3319 Gross Decl. Ex. H.  The estimate concluded that

15 fire damage repairs on the Property would cost $10,727.97.  Id.  On

16 November 8, 2008, Maryland paid Jardine $10,227.97 (the amount of

17 the repair estimate less Jardine's $500 deductible).  Id. Ex. I.

18 Maryland and Jardine also agreed to hire VP Construction to prepare

19 another repair estimate.  10-3319 Opp'n at 5.  In a letter dated

20 December 3, 2008, VP Construction estimated that the repairs for

21 the fire damage would cost $34,423.20 and would take 60 days to

22 complete, as long as building code upgrades were not required.  10-

23 3319 Gross Decl. Ex. F.  Jardine declares that code upgrades would

24 have cost an additional $59,446, but has presented no evidence

25 supporting this estimate.  10-3319 Jardine Decl. ¶ 7.[7]  Maryland

26 contends that such upgrades were unnecessary.  10-3319 Reply at 7.

27 ───────────────────────────────

28 [7] Jardine submitted declarations in opposition to Maryland's
   Motions.  ECF Nos. 40 ("10-3319 Jardine Decl."), 50 ("10-3318
   Jardine Decl.").

5

1    In any event, it is undisputed that Jardine never performed the

2    code upgrades or any other major repairs.  10-3319 Mot. at 13; 10-

3    3319 Opp'n at 9.

4         On September 10, 2009, the City of Hayward purchased the

5    Property from Jardine for approximately $1.3 million.  10-3318

6    Gross Decl. Ex. S.  The Property is to be used for the construction

7    of the Route 238 Corridor Improvement Project.  Id.

8         On February 10, 2010, Jardine filed his 10-3318 action against

9    Maryland for payments allegedly due for the plaster damage in the

10   Superior Court of California for Alameda County ("Superior Court").

11   ECF No. 1-1.  On March 9, 2010 he filed an amended complaint in the

12   10-3318 action as well as a complaint in his 10-3319 action for

13   payments allegedly due for the fire damage, both in Superior Court.

14   ECF No. 1-2 ("10-3318 Compl."); 10-3319 ECF No. 1 Ex. A ("10-3319

15   Compl.").  Maryland removed both actions to federal court on July

16   29, 2010 on diversity grounds.  ECF No. 1; 10-3319 ECF No. 1.

17        Both complaints allege three causes of action:  (1) breach of

18   contract; (2) breach of implied covenant of good faith and fair

19   dealing; and (3) violations of the Fair Claims Settlement Act as

20   set forth in California Insurance Code § 790.03 et seq. and

21   California Code of Regulations § 2695.1 et seq.  10-3318 Complaint;

22   10-3319 Complaint.

23        In its 10-3318 Motion, Maryland argues that summary judgment

24   is appropriate because (1) no private right of action exists for

25   the statutory violation alleged in Jardine's third cause of action

26   (2) Jardine's plaster claim is barred under the Policy's

27   exclusions, (3) Jardine is not entitled to any further payments

28   under the Policy, and (4) Jardine is not entitled to any additional

**United States District Court**
For the Northern District of California

coverages under the policy.  10-3318 Motion at 8-9.  With respect
to its 10-3319 Motion, Maryland argues that summary judgment is
appropriate because (1) no private right of action exists for the
alleged statutory violations, (2) Jardine has been fully
compensated for his fire loss, (3) Jardine is not entitled to
coverage for code upgrades, and (4) Jardine is not entitled to
Business Income coverage.  10-3319 Motion at 5-6.

## III.  **LEGAL STANDARD**

Entry of summary judgment is proper "if the movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  Summary judgment should be granted if the evidence would
require a directed verdict for the moving party.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]
mandates the entry of summary judgment . . . against a party who
fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be
believed, and all justifiable inferences are to be drawn in his
favor."  Anderson, 477 U.S. at 255.  However, "[t]he mere existence
of a scintilla of evidence in support of the plaintiff's position
will be insufficient; there must be evidence on which the jury
could reasonably find for the plaintiff."  Id. at 252.  "When
opposing parties tell two different stories, one of which is
blatantly contradicted by the record, so that no reasonable jury
could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."
<u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

**IV.   DISCUSSION**

    **A.   Maryland's 10-3318 Motion**

        **1.   Fair Claims Settlement Practices Act**

Maryland moves for summary judgment on the third cause of action in 10-3318 on the grounds that no private right of action exists under California Insurance Code Section 790.03 <u>et seq</u>. and California Code of Regulations Section 2695.1 <u>et seq</u>.  10-3318 Mot. at 25.  Jardine does not object to the dismissal of his third cause of action.  10-3319 Opp'n at 22-23.  Accordingly, the Court GRANTS Maryland's 10-3318 Motion as to Jardine's third cause of action for violation of the Fair Claims Settlement Practices Act.

        **2.   Policy Exclusions**

Maryland argues that Jardine's remaining claims for plaster damage are barred by two policy exclusions:  (1) the exclusion for faulty, inadequate, or defective renovation or remodeling under section II.A.3 of the Policy ("renovation/ remodeling exclusion"); and (2) the exclusion for loss or damage resulting from rust, corrosion, or deterioration under section II.A.2 ("deterioration exclusion").  10-3318 Mot. at 15-17.  Specifically, the Policy provides:

    II.   COVERED CAUSES OF LOSS

        RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless loss or damage is excluded or limited as described below:

        A.   EXCLUSIONS
            . . .

            2.   We will not pay for loss or damage caused by or resulting from any of the following:

**United States District Court**
For the Northern District of California

. . .

       c.(2)Rust, corrosion, fungus, decay,
           deterioration, hidden or latent
           defect or any quality in property
           that causes it to damage or destroy
           itself.

       But if an excluded cause of loss that is
       listed in 2.c.(1) through (6) results in .
       . . . a "specified cause of loss," we will
       pay for . . . the loss or damage caused by
       that specified cause of loss.
. . .

3.   We will not pay for loss or damage caused
    by or resulting from any of the following.
    But if an excluded Cause of Loss that is
    listed in 3.a. through 3.c. results in a
    Covered Cause of Loss, we will pay for the
    loss or damage caused by that Covered
    Cause of Loss.
. . .

    c.  Faulty, inadequate or defective:
. . .

      (2)  Design, specifications, workmanship,
          repair, construction, renovation,
          remodeling, grading, compaction;

      (3)  Materials used in repair,
          construction, renovation or
          remodeling; . . . .

    Or part or all of any property on or away
    from the "described premises".

Policy at 7-8, 10 (emphasis added).

    Maryland argues that the renovation/remodeling exclusion applies here because Chavez and Serna applied plaster to the walls to renovate and remodel the Property. 10-3318 Mot. at 16. Maryland contends the plaster application amounted to faulty, inadequate, or defective renovation or remodeling because the walls began to peel and blister after it was applied. Id. Maryland

9

further argues that the deterioration exclusion applies because the plaster application resulted in a "sulfate attack" which caused Jardine's walls to deteriorate.  Id. at 16-17.

Jardine responds that neither exclusion applies.  Jardine points out that, while the Policy does exclude loss or damage resulting from defective renovation or remodeling, it also states: "if an excluded Cause of Loss . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."  10-3318 Opp'n at 11.  Jardine argues that because the plaster application resulted in a covered cause of loss, he is entitled to compensation.  10-3318 Opp'n at 11.  Jardine also argues that the deterioration exclusion does not apply because the damage to his wall was the result of a "specific event" that caused the wall to degrade within a short period of time, not the result of a "gradual decline."  Id. at 12.  Finally, Jardine contends that the earlier determination by Maryland's claims adjustors that this was a covered claim should be binding on Maryland.  Id.

Jardine is correct that the remodeling/renovation exclusion bars only the replacement of the plaster, not the loss resulting from its application.[8]  Therefore, the key question is whether the deterioration exclusion bars Jardine from recovering for the resulting loss.  California courts have found that deterioration includes "slow-moving disintegration or corrosion of the [insured material] because of external forces."  Brodkin v. State Farm Fire & Cas. Co., 217 Cal. App. 3d 210, 265 (Cal. Ct. App. 1989).  The Ninth Circuit applied this principle in Berry v. Commercial Union Ins. Co., 87 F.3d 387 (9th Cir. 1996).  In Berry, the question

---

[8] Maryland concedes as much in its Reply.  See 10-3318 Reply at 3.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   before the court was whether damage to an insured's irrigation

2   pipes caused by a liquid fungicide was barred by an insurance

3   policy's "deterioration" exclusion.  Id. at 388.  The insured had

4   flushed the fungicide through her pipes to combat potato and carrot

5   blight and discovered the damage two years later.  Id.  The Ninth

6   Circuit held that "a degradation that takes two years to manifest"

7   was "slow-moving" and therefore constituted "deterioration."[9]  Id.

8   at 389 n.3.

9       The Court finds that the deterioration exclusion bars

10  Jardine's claim.  Jardine concedes that the damage to his wall

11  "occurred over an approximate year and a half time," 10-3318 Opp'n

12  at 12, just short of the two-year timeframe at issue in Berry.

13  Such "slow-moving disintegration or corrosion" constitutes

14  deterioration.  The Court rejects Jardine's contention that the

15  deterioration exclusion does not apply because the plaster damage

16  was caused by the specific act of his tenants.  Jardine cites no

17  authority supporting his position, and the Ninth Circuit reached a

18  contrary conclusion in Berry.  In that case, a specific act -- the

19  use of liquid fungicide -- caused the deterioration.[10]

---

20

21  [9] The Ninth Circuit ultimately found in favor of the insured
    because the fungicide manufacturer's failure to warn about the

22  corrosive effects of its product was the "proximate efficient
    cause" of the damage.  Berry, 387 F.3d at 393.  The court found

23  that this constituted a peril covered by the insured's policy.  Id.
    Jardine has not argued that Chavez and Serna's negligence was the

24  proximate efficient cause of his loss.  Even if that issue was
    before the Court, the Policy's renovation/remodeling exclusion

25  would bar Jardine from recovering for faulty, inadequate or
    defective renovation or remodeling.

26  [10] The Court also rejects Jardine's contention that the "policy
    states that even if this were simple deterioration, the claim is

27  covered under the policy if it is a Covered Cause of Loss."  10-
    3318 Opp'n at 12.  The Policy actually states:  "if an excluded

28  cause of loss [including deterioration] results in . . . a
    'specified cause of loss,' we will pay for . . . the loss or damage

United States District Court
For the Northern District of California

1    The Court also rejects Jardine's contention that earlier

2    determinations by Maryland's adjustors that Jardine's claim was

3    covered should be binding on Maryland.  Jardine points to language

4    from a November 6, 2008 letter from Maryland adjustor Mitch Hammond

5    ("Hammond") stating that "the investigation into the cause and the

6    review of the policy does not show that the loss is excluded."  10-

7    3318 Opp'n at 12, 13; 10-3318 Peck Decl. Ex E ("Olson Dep.") at 69-

8    70.[11]  Jardine offers no authority suggesting that the preliminary

9    findings of an insurance adjustor are binding on the insurance

10   company.  Further, nothing in Hammond's statement indicates that he

11   intended to bind Maryland or offer a final determination on

12   Jardine's claim.  In fact, Maryland repeatedly reserved its rights

13   under the Policy throughout its handling of the claim.  10-3318

14   Gross Decl. Ex. E at 12; 10-3318 Gross Supp. Decl. Ex. AA at 3.

15   The Hammond letter is also insufficient to raise a genuine dispute

16   of material fact because there is no indication of what facts

17   Hammond based his findings on and whether those facts contradict

18   the current record.[12]

19   _____

20   caused by the 'specified cause of loss.'"  Policy at 8-9.  The
     Policy defines "specified cause of loss" to mean fire, lightning,

21   explosion, and a variety of other things.  Id. at 26.  The wall
     damage claimed by Jardine does not fall within any of the

22   categories set forth by the Policy.  See id.

23   [11] Ronald G. Peck ("Peck"), Jardine's attorney, submitted
     declarations in support of Jardine's Opposition to Maryland's

24   Motions in 10-3318 and 10-3319.  ECF Nos. 51 ("10-3318 Peck
     Decl."); 10-3319 ECF No. 28 ("10-3319 Peck Decl.").  Attached as

25   Exhibit E to the 10-3318 Peck Declaration is a portion of the
     deposition transcript of John Olson ("Olson"), Maryland's executive

26   general adjuster on Jardine's claim.

27   [12] Jardine has not submitted a copy of the Hammond letter to the
     Court.  Instead, he relies on portions of the Olson deposition in

28   which Olson testifies about the contents of the Hammond letter.
     Olson's testimony does not describe how Maryland reached its
     preliminary determination on Jardine's claim.

**United States District Court**
For the Northern District of California

1   The Court finds that Jardine's 10-3318 claim is barred by the

2   Policy's deterioration exclusion.  Accordingly, the Court GRANTS

3   Maryland's Motion as to Jardine's claims for breach of contract and

4   breach of the implied covenant of good faith and fair dealing.[13]

5   **B.   Maryland's 10-3319 Motion**

6         **1.   Fair Claims Settlement Practices Act**

7   As in 10-3318, Jardine does not object to the dismissal of his

8   third cause of action in 10-3319 for violations of the Unfair

9   Insurance Practices Act.  Accordingly, the Court GRANTS Maryland's

10  10-3319 Motion as to Jardine's third cause of action.

11        **2.   Fire Loss Coverage**

12  Maryland contends that Jardine has been fully compensated for

13  the property damage resulting from the fire.  10-3319 Mot. at 10-

14  12.  Specifically, Maryland argues that Jardine has already

15  received $41,099.22 in insurance proceeds -- $30,781.25 from

16  OneBeacon[14] and $10,227.97 from Maryland -- to repair $34,423.20 in

17  fire damage.  10-3319 Reply at 4.  Maryland states that the

18  $30,781.25 payment was part of the Settlement Agreement between

19  Jardine and OneBeacon concerning the fire damage and that

20  Maryland's $10,227.97 payment was specifically intended to settle

21  Jardine's fire claim.  Id. at 1-3.

---

23  [13] Because the Court finds that Jardine's 10-3318 claim is barred
24  by the Policy's exclusions, it need not address Maryland's
    arguments that Jardine is not entitled to any further payments or
25  any additional coverages under the Policy.

26  [14] In its Motion, Maryland contended that OneBeacon paid Jardine
    $39,781.25 for fire damage repairs.  10-3319 Mot. at 11.  In its
27  Reply, Maryland concedes that only $30,781.25 of OneBeacon's
    payment was for fire damage, and the remainder was for loss of
    rent.  10-3319 Reply at 3.  Maryland claims that it changed its
28  figure after discovering new evidence.  Id.

Jardine concedes that the estimated cost to repair the fire damage was $34,423.20, plus the cost of code upgrades.[15]  10-3319 Opp'n at 7.  However, he contends that there is a dispute about the purpose of the payments from OneBeacon and Maryland.  10-3319 Opp'n at 7.  Jardine declares that the OneBeacon payment was not for fire repairs but "was paid as part of [an] effort to obtain a release from me for many other things."[16]  10-3319 Jardine Decl. ¶ 5. Jardine further declares that he "never was fully clear what [Maryland's $10,227.97] payment was for," but he understood it to be an advance towards his claim for the plaster damage and lost rent.  Id. ¶ 10.

Jardine's threadbare and self-serving declaration is blatantly contradicted by the record.  The OneBeacon Settlement Agreement, which Jardine signed, states that Jardine was "being paid for damage repairs that may exceed the reasonable and necessary cost of repair of the fire and damage and also constitutes a replacement cost payment before said fire damage repair work is completed." Settlement Agreement ¶ 2.  Further, correspondence between Jardine and one of OneBeacon's adjustors concerning the settlement, which included an itemized list of the components of the Settlement Agreement, shows that Jardine could have no reason to believe that

---

[15] The issue of whether Jardine was entitled to payment for the cost of code upgrades under his Building Ordinance or Law Coverage is addressed below.

[16] Jardine also contends that the Court has already found that there was a substantial conflict in evidence concerning the purpose of this payment.  10-3319 Opp'n at 7.  The Court rejects this argument.  The Court previously held that there was a genuine dispute of material fact concerning whether the Settlement Agreement barred Jardine's 10-3335 action against OneBeacon; however, the Court did not make any findings about the purpose of the payments made pursuant to the Settlement Agreement.  See 10-3335 ECF No. 42.

1   the $30,781.25 was for anything but fire damage repairs.  <u>See</u> 10-

2   3319 Gross Decl. Ex F.  Accordingly, no reasonable juror could find

3   that the purpose of the OneBeacon payment was for anything other

4   than compensation for the fire damage.

5       Nor is there a genuine dispute of material fact as to the

6   purpose of Maryland's $10,227.97 payment.  Jardine's declaration

7   that the payment was an advance towards his plaster claim and lost

8   rent is directly contradicted by the record.  Maryland's August 28,

9   2008 repair estimate found fire damage of $10,727.97 on the

10  Property.  10-3319 Gross Decl. Ex. H.  The estimate called for

11  "replacing the suspended ceiling tile in the main area, cleaning

12  the grid, painting the wall, replacing the carpet and a few

13  fluorescent light fixtures."  <u>Id.</u>  Other documentation provided by

14  Maryland shows that the company later paid Jardine $10,227.97, the

15  cost of repairs less Jardine's $500 deductible, for his June 13,

16  2007 fire loss.[17]  10-3319 Gross Decl. Ex. I.  Jardine has offered

17  no evidence to rebut these documents other than his own

18  declaration, which is devoid of any specific factual allegations.

19  Jardine's declaration is insufficient to create a genuine dispute

20  of material fact concerning the purpose of Maryland's $10,227.97

21  payment.

22      Accordingly, the Court finds that Jardine was more than fully

23  compensated for the $34,423.20 repair costs resulting from his fire

24  loss.

25  ///

26  ///

27  [17] Additionally, a July 28, 2009 letter to Jardine from an adjustor
28  writing on behalf of Maryland, states that "Maryland Casualty has
    previously paid you $10,727.97 [less your deductible] to repair
    damage from the fire."  10-3319 Gross Reply Decl. Ex. E at 9.

### 3.   Building Ordinance or Law Coverage

In addition to repair costs, Jardine claims that he is entitled to at least $59,446 for code upgrades under the Building Ordinance or Law provisions of the Policy.  10-3319 Opp'n at 7. The Building Ordinance or Law coverage pays for increased costs to repair, reconstruct, and/or remodel damaged and undamaged portions of a property "when the increased cost is the consequence of enforcement of building, zoning or land use ordinance law."  Policy at 15.  Jardine's policy states:  "If you do not repair or replace the damaged building, we will pay only to demolish and clear the site of the undamaged portions of the building."  Id.

Maryland argues that Jardine is not entitled to Building Ordinance or Law coverage for two independent reasons.  10-3319 Mot. at 12-13.  First, Jardine never repaired the fire damage and the express terms of the policy bar windfall payments in such situations.  Id.  Second, Maryland contends that there never was an enforcement of an ordinance or law affecting Jardine's repairs. Maryland points to Jardine's interrogatory response that he "was required to do some of the repairs without formal determination by the building department what the legally required up-grades might be."  Mot. at 13.

In his Opposition, Jardine responds to both points.  First, he argues that he intended to repair the fire damage but failed to do so because he lacked the funds and Maryland refused to advance the cost of repairs.  10-3319 Opp'n at 10; 10-3319 Jardine Decl. ¶ 13. Jardine declares that his contractor could not know what code up-grades were required until it applied for a building permit, but it was later determined that the upgrades would cost approximately

16

**United States District Court**
For the Northern District of California

1   $59,446.  10-3319 Jardine Decl. ¶¶ 6-7.  Jardine argues that he

2   should not be punished for Maryland's refusal to pay for repairs.

3   10-3319 Opp'n at 10.  Second, Jardine argues that the City of

4   Hayward never enforced the building codes and required code

5   upgrades because Maryland refused to pay Jardine's contractor and,

6   consequently, the contractor did not apply for the building permit

7   to do the work.  Id.  Again, Jardine maintains that Maryland should

8   not be permitted to take advantage of its refusal to pay for

9   repairs.  Id.

10       The Court agrees with Maryland.  Jardine's policy states that

11  Maryland will pay "only to demolish and clear the site of the

12  undamaged portions of the building" where repairs are not

13  performed.  Policy at 15.  Jardine does not dispute that he never

14  performed any code upgrades after the fire.  Jardine Decl. at 12-

15  13.  Further, as the property has been sold to the City of Hayward,

16  Jardine never will perform any code upgrades on the Property.

17  Jardine's argument that he would have performed the repairs had

18  Maryland advanced him the money is unpersuasive.  His policy does

19  not require Maryland to advance money for speculative upgrades, and

20  Jardine points to no authority which would require Maryland to

21  provide such an advance.  Awarding Jardine funds for repairs that

22  will never be performed would amount to the kind of windfall

23  payment that is expressly foreclosed by his policy.

24       Moreover, it is unclear whether code upgrades were even

25  necessary.  Jardine declares that "code up-grades would cost

26  approximately $59,446," but fails to provide any evidence to

27  support that figure.  See Jardine Decl. ¶ 7.  Jardine also submits

28  deposition testimony of his contractor, Gary Fair ("Fair"),

purportedly showing that code upgrades were required due to the fire damage.  10-3319 Peck Decl. Ex. B.  However, Fair's testimony is so vague that it is unclear whether he believed upgrades were required at all.  Id.  Fair testified:  "When you get a permit to do substantial upgrades to any building . . ., the new codes kick in and comply and require that you bring up the building to code standard."  Id.  Fair does not say whether Jardine needed to do "substantial upgrades."  Further, it is unclear from the testimony whether Fair is referring to upgrades resulting from Jardine's fire or plaster damage.  Id.

For these reasons, the Court finds that Jardine is not entitled to Building Ordinance or Law coverage.

### 4.   Business Income Coverage

Jardine also claims that he is entitled to Business Income coverage because his tenant moved out as a result of the fire.  10-3319 Opp'n at 11-12.  Jardine's policy provides:  "We will pay for the actual loss of 'business income' you sustain due to the necessary suspension of 'operations' during the 'period of restoration,' but not to exceed 12 consecutive months."  Policy at 13.  The policy defines operations as "your business activities occurring at the described premises."  Id.  The "period of restoration" commences on "the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss."  Id. The period ends on the earlier of "the date when the property at the 'described premises' should be repaired, rebuilt or replaced with reasonable speed or similar quality" or "[t]he date when business is resumed at the new location."  Id.

Maryland argues that Jardine is not entitled to Business

1    Income coverage because he did not cease his operations as landlord

2    during the period of restoration.  10-3319 Mot. at 14.  Maryland

3    contends that the period of restoration commenced on June 13, 2007,

4    when the fire occurred, and ended sixty days later since the VP

5    Construction estimate stated that repairs could be completed in

6    sixty days.  10-3319 Mot. at 14.  Maryland argues that Jardine did

7    not suspend business operations during this time because Jardine

8    continued to rent the premises to Pardo for four months after the

9    fire.  10-3319 Mot. at 14-15; 10-3319 Reply at 10.

10        Jardine responds that the estimate provided by VP Construction

11    indicated that fire repair work would take sixty days only if no

12    building code upgrades were required.  10-3319 Opp'n at 11.

13    Jardine contends that because code upgrades were required, the

14    period of restoration should be longer than sixty days, though he

15    does not specify how much longer.  Id.  Jardine also argues that he

16    is entitled to recover lost income because Pardo moved out as a

17    result of the fire damage, which would have been repaired earlier

18    if Maryland had not refused to pay the repair costs.  Id. at 11-12.

19        The Court finds that Jardine has failed to make a showing

20    sufficient to establish that he is entitled to Business Income

21    coverage under the Policy.  Jardine has testified that Pardo

22    stopped paying rent in September or October 2007, three to four

23    months after the fire.  See 10-3119 Gross Decl. Ex. A at 116.

24    Thus, at trial, Jardine would bear the burden of proving that the

25    period of recovery, i.e., the time it would have taken to repair

26    the Property with reasonable speed or similar quality, exceeded

27    three to four months.  The VP Construction estimate -- the only

28    evidence before the Court bearing on the period of recovery --

indicates that Jardine's repairs would have taken approximately
sixty days.  10-3319 Gross Decl. Ex. F.

     The evidence does not support Jardine's contention that code
upgrades would have extended the period of recovery past the date
when Pardo ceased paying rent.  First, as discussed above, it is
unclear whether code upgrades were necessary.  Second, even if code
upgrades were necessary, Jardine has failed to offer any evidence
that they would have taken more than three to four months to
complete.  Jardine points to language in the VP Construction
estimate stating that "Building Code compliance and Upgrades may
result in project exceeding 60 days." Id.  At trial, Jardine would
bear the burden of proving that upgrades were required and that
completing the upgrades would have required at least three to four
months.  Given, the paucity of the evidence offered by Jardine on
both of these points, no reasonable jury could conclude that he is
entitle to Business Income coverage.[18]

     The Court also rejects Jardine's contention that he is
entitled to Business Income coverage because repairs were delayed
due to Maryland's refusal to pay and, as a result, Pardo moved out
before repairs could be started.  The Policy expressly provides
that the period of recovery starts to run on the date of the loss,
not on the date when repairs could have or should have commenced.
Policy at 13.  Moreover, Jardine did not tender his claim for
repairs to Maryland until April 16, 2008, approximately six to
seven months after Pardo stopped paying rent and ten months after

---

[18] Moreover, Jardine has failed to offer any evidence concerning
how much income he would have lost during the period of recovery.
Without such evidence, the court cannot determine whether the
amount in controversy for his sole remaining claim for Business
Income coverage would exceed the jurisdictional minimum of $75,000.
See 28 U.S.C. § 1332(a).

United States District Court
For the Northern District of California

the fire.   Jardine RFA Response at 2.

The Court finds that Jardine has failed to raise a genuine dispute of material fact concerning whether he is entitled to any further compensation under the Policy.  Accordingly, the Court GRANTS Maryland's 10-3319 Motion.

**V.   <u>CONCLUSION</u>**

For the forgoing reasons, the Court GRANTS Defendant Maryland Casualty Company's Motions for Summary Judgment against Plaintiff James Jardine in Case Numbers 10-3318 and 10-3319.

IT IS SO ORDERED.

Dated: October 4, 2011



UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California